IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| INTEL CORPORATION,<br>a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS OF THE<br>UNIVERSITY OF WISCONSIN SYSTEM,<br><br>UNIVERSITY OF WISCONSIN-MADISON,<br>and<br><br>CAROLYN A. MARTIN, JOHN D. WILEY,<br>DAVID WARD, MARVIN H. SOLOMON,<br>DAVID M. KONSHAK, GURINDAR S. SOHI,<br>SCOTT E. BREACH, ANDREAS I.<br>MOSHOVOS, AND TERANI N.<br>VIJAYKUMAR, individuals,<br><br>Defendants. | Civil Action No. 08-C-700 |

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Intel Corporation ("Intel"), by its undersigned counsel, brings this action against the Board of Regents of the University of Wisconsin System ("Board of Regents"), the University of Wisconsin-Madison ("UW-Madison"), Carolyn A. Martin, John D. Wiley, David Ward, Marvin H. Solomon, David M. Konshak, Gurindar S. Sohi, Scott E. Breach, Andreas I. Moshovos, and Terani N. Vijaykumar ("Defendants") and alleges as follows:

### INTRODUCTION

1. This action arises from the Defendants' request for research funding from Intel. Intel provided that funding to the Defendants pursuant to written letter agreements that provided that Intel would receive the benefits of that research "at no cost." Having entered into these

US1DOCS 6922009v1

Dockets.Justia.com

agreements and accepted funding from Intel, the Defendants used that funding to conduct research that led to the secret filing of a patent application and the issuance of United States Patent No. 5,781,752 ("the '752 Patent"). When the '752 patent issued, and notwithstanding their express agreements and representations to the contrary, the Defendants, through their agent WARF, commenced suit against Intel claiming infringement of the '752 patent. The Defendants have refused to acknowledge and honor their express agreements and representations and this suit seeks injunctive and compensatory relief as a result of their failure to do so.

## THE PARTIES

2. Plaintiff Intel is a Delaware corporation with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054.

3. Defendant Board of Regents is an 18-member board, established under Chapter 36 of the Wisconsin Statutes, that governs the University of Wisconsin System, with its principal place of business at 1860 Van Hise Hall, 1220 Linden Drive, Madison, WI 53706.

4. Defendant UW-Madison is a public university with its principal place of business at 1856 Van Hise Hall, 1220 Linden Drive, Madison, WI 53706.

5. Defendant Carolyn A. Martin is the current Chancellor of UW-Madison with a business address at 161 Bascom Hall, 500 Lincoln Drive, Madison, Wisconsin 53706. On information and belief, Martin is a citizen and resident of Wisconsin.

6. Defendant John D. Wiley is a Professor at UW-Madison and the Academic Program Director of UW-Madison's Graduate School of Education with a business address at 322 Lathrop Hall, 1050 University Avenue, Madison, WI 53706. Wiley was the Chancellor of UW-Madison at times relevant to this action, between 2001 and September of 2008. On information and belief, Wiley is a citizen and resident of Wisconsin.

2

7. Defendant David Ward was the Chancellor of UW-Madison at times relevant to this action, between 1993 and 2001. On information and belief, Ward resides at 1099 22nd Street, NW, Washington, DC 20037.

8. Defendant Marvin H. Solomon is and was, at all times relevant to this action, a professor of Computer Sciences at UW-Madison. At times relevant to this action, Solomon was also Chair of the Computer Sciences Department at UW-Madison. Solomon has a business address at 1210 West Dayton Street, Madison, WI 53706. On information and belief, Solomon is a citizen and resident of Wisconsin.

9. Defendant David M. Konshak was, at times relevant to this action, an Assistant Trust Officer for the University of Wisconsin System. On information and belief, Konshak resides at 223 St. Ann Avenue, Dickeyville, WI, 53808.

10. Defendant Gurindar S. Sohi is and was, at all times relevant to this action, a professor of Computer Sciences at UW-Madison. Sohi has a business address at 1210 West Dayton Street, Madison, WI 53706. On information and belief, Sohi is a citizen and resident of Wisconsin. Sohi, individually or in concert with others, directed, controlled or participated in the acts and practices of the Inventors set forth below.

11. Defendant Scott E. Breach was, at times relevant to this action, a doctoral candidate and assistant professor in the Department of Computer Sciences at UW-Madison and participated in the acts and practices of the Inventors set forth below. On information and belief, Breach resides at 7228 Tanaqua Lane, Austin, Texas 78739.

12. Defendant Andreas I. Moshovos was, at times relevant to this action, a doctoral candidate and assistant professor in the Department of Computer Sciences at UW-Madison and

participated in the acts and practices of the Inventors set forth below. On information and belief, Moshovos resides at 25 The Esplanade, Toronto, Ontario, M5E 1W5, Canada.

13. Defendant Terani N. Vijaykumar was, at times relevant to this action, a doctoral candidate and assistant professor in the Department of Computer Sciences at UW-Madison and participated in the acts and practices of the Inventors set forth below. On information and belief, Vijaykumar resides at 1794 Fernleaf Drive, West Lafayette, IN 47906.

14. Defendants Gurindar S. Sohi, Scott E. Breach, Andreas I. Moshovos and Terani N. Vijaykumar are referred to collectively herein as the "Inventors."

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331, § 1332, § 1338, and § 1367.

16. This Court has personal jurisdiction over the Board of Regents and UW-Madison pursuant to Wis. Stat. § 801.05 because, *inter alia*, each is located within the state and is engaged in substantial and not isolated activities within this state.

17. This Court has personal jurisdiction over each of the remaining Defendants pursuant to Wis. Stat. § 801.05 because, *inter alia*, he or she is a "natural person domiciled within this state," and/or because the current action arises out of "a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiffs benefit, by the defendant to perform services within this state" and "services actually performed for the plaintiff by the defendants within this state."

18. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because at least one defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

19. All conditions precedent to commencement of suit have occurred or been performed, including the filing of a Notice of Claim under Wis. Stat. 893.82 and, in any event, the Defendants are estopped from asserting or relying upon any such conditions precedent, to the extent any are found to apply.

## FACTS

20. In 1994, Sohi—then an Associate Professor in the Department of Computer Sciences at UW-Madison—submitted a research proposal to Intel titled "Investigation of the Multiscalar Paradigm" (the "Proposal"), seeking $108,000 (altered to $89,000 by hand in the Proposal) in funding over a period of three years—from January 1995 to December 1997. The Proposal described two objectives: "(i) to continue the development and refinement of the multiscalar model, and (ii) to create an environment in which a *bidirectional transfer of technology and expertise can occur between Intel and [Sohi's] research group at the University of Wisconsin*" (emphasis added). The Proposal also contained express representations that, in exchange for funding, Intel would become UW-Madison's "industrial partner" and that the technology developed pursuant to the research would be "transferred to Intel."

21. On December 8, 1994, Intel sent a letter addressed to Solomon, then chair of the Computer Sciences Department at UW-Madison, agreeing to provide $28,000 (the amount requested in the Proposal as a first-year installment) to "support the research of Professor Gurindar Sohi in the area of 'Investigation of the Multiscalar Paradigm.'" The letter states: "No restrictions per se are imposed on the grant except that it be used solely to support research in the technologies previously mentioned and that *Intel shall have unrestricted rights at no cost to the results of this research*" (emphasis added). As a prerequisite to receiving the funds, Intel's letter stated that UW-Madison was required to "*sign and return...this letter indicating your*

5

acceptance." The purpose of the italicized language was to ensure that Intel received the results of the research it was funding. Without such an undertaking, Intel would not have funded the research.

22.     On December 29, 1994, Konshak, then an Assistant Trust Officer for the University of Wisconsin System, countersigned the December 8, 2004 letter under the term "ACCEPTED" and returned it to Intel.

23.     In reliance upon the acceptance of the conditions imposed by Intel, Intel made the payment of $28,000 to UW-Madison.

24.     On information and belief, Defendants Breach, Moshovos and Vijaykumar were doctoral candidates and assistant professors in the Department of Computer Sciences at UW-Madison at or about the time that Intel provided this funding. On information and belief, Breach, Moshovos and Vijaykumar were supervised by Sohi, benefited from the funds contributed by Intel, and contributed to the research relating to the Multiscalar Paradigm. Each of them knew, or should have known, of Intel's funding of that research, and the conditions imposed upon that funding.

25.     On information and belief, the Inventors' research relating to the Multiscalar Paradigm directly resulted in an alleged invention (the "Alleged Invention") that was ultimately claimed in the '752 Patent and has now been asserted against Intel in a case pending before this Court (*Wisconsin Alumni Research Foundation v. Intel Corporation*, Case No. 08-C-78-C) (the "patent infringement law suit"). According to the allegations in that action, the Alleged Invention was conceived in October 1995, and reduced to practice in the October-November 1995 time frame.

USIDOCS 6922009v1

26. On November 14, 1995, Intel sent a second letter addressed to Solomon, then chair of the Computer Sciences Department at UW-Madison, agreeing to provide an additional $30,000 (the amount requested in the Proposal as a second-year installment) to "support the research of Professor Gurindar Sohi in the area of 'Investigation of the Multiscalar Paradigm.'" This letter contains language identical to the December 8, 1994 letter, including that "Intel shall have unrestricted rights at no cost to the results of this research." Once again, UW-Madison was required to "*sign and return*...this letter indicating your acceptance" as a prerequisite to receiving the additional funding.

27. On December 18, 1995, Konshak, then Assistant Trust Officer for the University of Wisconsin System, countersigned the December 8, 2004 letter under the term "ACCEPTED" and returned the letter to Intel. Sohi is copied on the countersigned letter.

28. In reliance upon the acceptance of the conditions imposed by Intel, Intel made the payment of $30,000 to UW-Madison.

29. By signing the letter agreements described in paragraphs 21-28 above and accepting the funds provided pursuant to those letter agreements, the Defendants represented and agreed that they would provide Intel with rights to the Multiscalar Paradigm research "at no cost" to Intel.

30. The Multiscalar Paradigm research was also funded—in addition to those amounts received from Intel—by one or more federal agencies. As such, under federal law and UW-Madison's Intellectual Property Policies and Procedures, UW-Madison had the right to take title to the '752 Patent. UW-Madison's Intellectual Property Policies and Procedures[1]

---

[1] On information and belief, UW-Madison's current Intellectual Property Policies and Procedures ("UW-Madison IP Policy") are the same, or substantially similar, as those in effect at all times relevant to this Complaint. UW-Madison's IP Policy is available at http://info.gradsch.wisc.edu/research/ip/policies.html.

7

specifically state that: "Federal law and regulations provide that the University has the right to retain title to any inventions conceived or made in whole or in part during federally funded grants and contracts. ... [Wisconsin Alumni Research Foundation], acting as the University's patent management organization, must elect whether or not to retain title to the invention."

31. UW-Madison's Intellectual Property Policies and Procedures also state that, in "any agreement with an extramural research sponsor," such as Intel, "the principal investigator must consider the existing contractual obligations of the University or the researcher(s)" and "[o]bligations under existing federal or other extramural sponsorship agreements must be identified and reconciled with the agreement under negotiation." The Policy specifically recognizes that "[f]ailure to reconcile potentially conflicting claims to ownership of intellectual property may result in a lawsuit for breach of contract against the University and damage the professional reputation and credibility of the researcher."

32. On information and belief, Sohi, Breach, Moshovos and Vijaykumar assigned their Alleged Invention to the Wisconsin Alumni Research Foundation ("WARF")—an organization that UW-Madison describes as its "patenting and licensing arm" and that acts as UW-Madison's agent for the purpose of commercializing its intellectual property rights. On information and belief, doing so required the Inventors to sign a "short contract, called a Memorandum Agreement, in which the inventors assign the invention to WARF," which "in return agrees to share a portion of the royalty income with the inventor group." *See* http://www.warf.org/ inventors/index.jsp?cid=14&scid=6 and http://www.warf.org/inventors/ index.jsp?cid=7 ("The inventors receive 20 percent of the gross royalty revenue generated by a licensed invention"). On information and belief, WARF expects that inventors will contribute their "knowledge about the marketplace, likely commercial applications of [their] work, and

US1DOCS 6922009v1

specific companies that are possible licensees." *Id.* WARF also requests that UW inventors assist in the patenting and commercialization of alleged inventions by being available to "talk to licensees along with WARF personnel" and to "provide follow-up information, samples of materials, and similar assistance." *See id.*

33. On information and belief, WARF's policies and procedures require the inventors to sign a form – the UW-Madison Invention Disclosure Report – that identifies "[w]hich non-federal funds contributed to making th[e] invention" and indicates whether "any other agreements are relevant to th[e] invention." *See* UW Madison Invention Disclosure Report (attached) and http://www.warf.org/inventors/index.jsp?cid=17&scid=20. The UW-Madison Invention Disclosure Report states that by "submitting [it] [the inventors] are accepting the responsibility for the accuracy of the information supplied." By signing the Memorandum Agreement and the UW-Madison Invention Disclosure Report, each of the Inventors affirmed that he had provided to WARF "accura[te] .. information" concerning "funds [that] contributed to making th[e] invention" and "agreements [] relevant to th[e] invention" In exchange for signing these forms and patenting through WARF, the Inventors were guaranteed twenty percent (20%) of the gross income realized by WARF as fees or royalties for any license granted by WARF to the Alleged Invention. *See* http://www.warf.org/inventors/index.jsp?cid=7 ("The inventors receive 20 percent of the gross royalty revenue generated by a licensed invention").

34. On June 17, 1996, Sohi submitted an invention disclosure form to UW-Madison listing Intel, among others, as a source of funding for the research leading to the Alleged Invention.

35. On December 26, 1996, a patent application was filed for the Alleged Invention. On information and belief, and pursuant to the Memorandum Agreement, that application was prepared and filed by WARF or its agents on behalf of UW-Madison and the Inventors.

36. On July 14, 1998, the '752 Patent, titled "Table Based Data Speculation Circuit for Parallel Processing Computer," was issued. The '752 Patent lists on its face as inventors, Andreas I. Moshovos, Scott E. Breach, Terani N. Vijaykumar and Gurindar S. Sohi. The Alleged Invention claimed in the '752 Patent resulted from the research funded by Intel pursuant to the letter agreements described in paragraphs 21-28 above.

37. On information and belief, UW-Madison and/or the Inventors subsequently assigned title to the '752 Patent to WARF.

38. On February 8, 2008, WARF filed suit against Intel in this Court, (*Wisconsin Alumni Research Foundation v. Intel Corporation*, Case No. 08-C-78-C), alleging infringement of the '752 Patent by, among other things, Intel's Core Microarchitecture. By filing this suit, WARF voluntarily invoked federal jurisdiction, thereby waiving sovereign immunity on behalf of itself and UW-Madison, Board of Regents, Ward, Wiley, Martin, Solomon, Konshak, and Sohi, Breach, Moshovos, and Vijaykumar as UW-Madison's agent for the commercialization of its intellectual property rights.

39. Having agreed to grant Intel clear, legal rights to the results of the research performed by Sohi, Moshovos, Vijyakumar, and Breach in connection with the Multiscalar Paradigm, the Defendants had a ministerial duty to perform the terms of the agreement.

40. On November 3, 2008, Intel sent a letter to UW-Madison requesting that it advise Intel—by November 7—as to whether it would honor Intel's contractual rights to the results of the Multiscalar Paradigm research, including Intel's rights to the '752 Patent. In a telephone

10

USIDOCS 6922009v1

conversation on November 7, UW-Madison advised Intel that it was evaluating these issues. On November 17—having received no further response from UW-Madison—Intel sent a second letter to UW-Madison, requesting a response by November 19 as to whether it would honor Intel's contractual rights. Intel did not receive any response by November 19.

41. Defendants assisted and continue to assist WARF in its patent infringement suit against Intel. By permitting and assisting the prosecution of that suit, Defendants are continuing to deprive Intel of the value of its investment in their research and acting in a manner inconsistent with the representations they made, and in violation of commitments and duties they assumed.

42. Intel has incurred substantial damages as a direct result of the wrongful acts of Defendants, including, but not limited to, amounts invested as funding for the research related to the Multiscalar Paradigm and attorneys' fees and litigation costs related to WARF's patent infringement suit against Intel.

## FIRST CAUSE OF ACTION: BREACH OF EXPRESS CONTRACT
(Against all Defendants)

43. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

44. The letters exchanged between Intel and Defendants constitute an express, valid contract, the terms of which are clear and unambiguous on its face.

45. Intel has fully performed its obligations under the contract.

46. Defendants breached the contract by, *inter alia*, signing the Memorandum Agreement with WARF, refusing to honor Intel's contractual rights, assisting and continuing to assist WARF in its patent infringement suit against Intel and entering in to a Common Interest Agreement with WARF in connection with WARF's patent infringement suit against Intel.

11

47. As a result of Defendants' breaches, Intel has suffered irreparable harm and substantial damages, and will continue to suffer such harm unless Defendants are enjoined from continuing their improper conduct.

### SECOND CAUSE OF ACTION: BREACH OF CONTRACT IMPLIED-IN-FACT
(Against all Defendants)

48. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

49. Based on the facts described above, Intel and Defendants have a valid contract implied-in-fact.

50. Intel has fully performed its obligations under the contract.

51. Defendants breached the contract by, *inter alia*, signing the Memorandum Agreement with WARF, refusing to honor Intel's contractual rights, assisting and continuing to assist WARF in its patent infringement suit against Intel and entering in to a Common Interest Agreement with WARF in connection with WARF's patent infringement suit against Intel.

52. As a result of Defendants' breaches, Intel has suffered irreparable harm and substantial damages, and will continue to suffer such harm unless Defendants are enjoined from continuing their improper conduct.

### THIRD CAUSE OF ACTION: BREACH OF IMPLIED DUTY OF GOOD FAITH IN THE PERFORMANCE OF A CONTRACT
(Against all Defendants)

53. Plaintiffs repeat and re-allege the allegations of the foregoing paragraphs as if fully set forth herein.

54. Defendants owe Intel a duty of good faith, implied by law in the performance of the contract.

US1DOCS 6922009v1

55. Defendants, willfully and in bad faith, breached this duty by, *inter alia*, signing the Memorandum Agreement with WARF, refusing to honor Intel's contractual rights, assisting and continuing to assist WARF in its patent infringement suit against Intel and entering in to a Common Interest Agreement with WARF in connection with WARF's patent infringement suit against Intel.

56. As a result of Defendants' breaches, Intel has suffered irreparable harm and substantial damages, and will continue to suffer such harm unless Defendants are enjoined from continuing their improper conduct.

### FOURTH CAUSE OF ACTION: UNJUST ENRICHMENT
(Against all Defendants)

57. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

58. Intel conferred a benefit on Defendants including, *inter alia*, Intel's funding of the Multiscalar Paradigm research.

59. Defendants appreciated or had knowledge of that benefit.

60. Defendants accepted and retained that benefit under circumstances making it inequitable for them to retain that benefit.

### FIFTH CAUSE OF ACTION: UNFAIR COMPETITION
### UNDER CAL. BUS. & PROF. CODE § 17200
(Against all Defendants)

61. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

62. Defendants' actions, as described above, constitute unlawful, unfair or fraudulent business acts under Cal. Bus. & Prof. Code § 17200.

13

63. As a result of Defendants' unlawful, unfair or fraudulent business acts, Intel has suffered irreparable harm and substantial damages, and will continue to suffer such harm unless Defendants are enjoined from continuing their improper conduct.

### SIXTH CAUSE OF ACTION: PROMISSORY ESTOPPEL
(Against all Defendants)

64. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

65. Defendants made representations constituting a clear promise that Intel would have unrestricted rights at no cost to the results of the Multiscalar Paradigm research.

66. Defendants' promises were of the type that they should have reasonably expected to induce action or forbearance of a definite and substantial character on the part of Intel.

67. Defendants' promises actually induced Intel's action and forbearance.

68. Intel has suffered substantial damages as a result of this action and forbearance, and injustice can be avoided only by compensating Intel for those damages.

### SEVENTH CAUSE OF ACTION: INDEMNIFICATION
(Against all Defendants)

69. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

70. As described above, Defendants granted Intel rights at no cost to the results of the Multiscalar Paradigm research, including, but not limited to, rights to the Alleged Invention claimed under the '752 Patent.

71. As such, Intel has no liability to WARF for infringement of the '752 Patent.

72. Defendants are liable to Intel to indemnify and hold Intel harmless from claims of infringement of the '752 Patent as alleged by WARF.

14

73. Therefore, to the extent Intel incurs any damages, enhanced damages, and/or costs in connection with the patent infringement law suit (*Wisconsin Alumni Research Foundation v. Intel Corporation*, Case No. 08-C-78-C), including but not limited to attorneys' fees and costs, Defendants should be made to indemnify Intel in full. Defendants should also be made to indemnify Intel for attorneys' fees and costs already accrued in defending WARF's patent infringement suit.

### EIGHTH CAUSE OF ACTION: CONTRIBUTION
(Against all Defendants)

74. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

75. As described above, Defendants granted Intel rights at no cost to the results of the Multiscalar Paradigm research, including, but not limited to, rights to the Alleged Invention claimed under the '752 Patent.

76. To the extent that Intel has any liability to WARF for infringement of the '752 Patent, Defendants are jointly liable to Intel to hold Intel harmless from claims of infringement of the '752 Patent as alleged by WARF for, *inter alia*, assigning title in the '752 Patent to WARF without notice of Intel's rights.

77. Therefore, to the extent Intel incurs any damages, enhanced damages, and/or costs in connection with the patent infringement law suit (*Wisconsin Alumni Research Foundation v. Intel Corporation*, Case No. 08-C-78-C), including but not limited to attorneys' fees and costs, Defendants should be made to contribute to that payment their fair share of the burden, in an amount to be determined at trial. Defendants should also be made to contribute to the payment of Intel's attorneys' fees and costs already accrued in defending WARF's patent infringement suit.

15

## NINTH CAUSE OF ACTION: STRICT LIABILITY MISREPRESENTATION
(Against the Board of Regents, UW-Madison, Solomon, Konshak and Sohi)

78. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

79. Where Defendants now claim that Intel does not have a valid right to the Alleged Invention claimed in the '752 Patent, Defendants' statements in the Proposal, December 8, 1994 letter and November 14, 1995 letter, inter alia, constitute untrue representations of fact.

80. Defendants made these representations on the basis of their personal knowledge, or under circumstances in which they necessarily ought to have known the truth.

81. Defendants had and continue to have economic interests in their misrepresentations including, *inter alia*, interests in receiving funding from Intel for the Multiscalar Paradigm research and interests in the form of licensing fees from the '752 Patent.

82. Intel relied upon Defendants' false representations of fact to its detriment and suffered substantial damages including, but not limited to, attorneys' fees and costs already accrued in defending WARF's patent infringement suit against Intel.

## TENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION
(Against the Board of Regents, UW-Madison, Solomon, Konshak and Sohi)

83. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

84. Where Defendants now claim that Intel does not have a valid right to the Alleged Invention claimed in the '752 Patent, Defendants' statements in the Proposal, December 8, 1994 letter and November 14, 1995 letter, *inter alia*, constitute untrue representations of fact.

85. Defendants made these representations knowing that they were untrue, or recklessly, without caring whether they were true or false.

16

86. Defendants made these representations with the intent to deceive Intel and to induce Intel to act upon them to Intel's pecuniary damage.

87. Intel relied upon Defendants' false representations of fact to its detriment and suffered substantial damages including, but not limited to, attorneys' fees and costs already accrued in defending WARF's patent infringement suit against Intel.

### ELEVENTH CAUSE OF ACTION: 42 U.S.C. § 1983
### DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS
### IN VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS

(Against Martin, Wylie, Solomon and Sohi in their official and individual capacities, and Ward, Konshak, Breach, Moshovos and Vijaykumar their individual capacities)

88. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

89. Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

90. Under color of state law, Defendants, *inter alia*, entered into an agreement with Intel to provide it with rights to the results of the Multiscalar Paradigm research in exchange for funding; accepted that funding in furtherance of that agreement; and then assigned title to the '752 Patent to WARF irrespective of Intel's rights. In addition, and also under color of state law, Defendants refuse to honor Intel's contractual rights, and continue to assist WARF in its patent infringement lawsuit against Intel.

91. As a direct and foreseeable consequence of these actions, Intel was, and continues to be, deprived of its vested property rights without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

92. Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Intel's constitutional rights.

US1DOCS 6922009v1

93. As a direct and foreseeable consequence, Intel has suffered irreparable harm and substantial damages, and will continue to suffer such harm unless and until Defendants are enjoined from continuing their improper conduct.

94. As a further consequence of these deprivations, Intel was required to retain counsel to represent it in patent infringement proceedings pursued against them, and incurred expenses associated with defending against these proceedings.

95. The Defendants' actions under color of law violate 42 U.S.C. § 1983, thereby entitling Intel to both compensatory and equitable relief.

**TWELFTH CAUSE OF ACTION: MANDAMUS UNDER WIS. STAT. §§ 783.01-.02**
(Against the Board of Regents and Martin, in their official and individual capacities)

96. Intel repeats and re-alleges the allegations of the foregoing paragraphs as if fully set forth herein.

97. Intel has a clear, legal right to the results of the research performed by Sohi, Moshovos, Vijyakumar, and Breach in connection with the Multiscalar Paradigm, including a right to use the '752 Patent;

98. The Board of Regents and Chancellor Martin's duty to perform under the agreement granting Intel legal rights to the results of the research performed by Sohi, Moshovos, Vijyakumar, and Breach in connection with the Multiscalar Paradigm, including a right to use the '752 Patent, is positive and plain, and non-discretionary;

99. Intel will suffer substantial harm by the nonperformance of the Board of Regents, Chancellor Martin, and UW-Madison;

100. Intel made written demands for the UW-Madison's performance on November 3, 2008, November 17, 2008, November 23, 2008, and December 1, 2008 but UW-Madison, and its

18

officials, including Chancellor Martin, refused to recognize Intel Corporation's clear, legal right to the results of the Multiscalar Paradigm research, including a right to use the '752 Patent.

## JURY DEMAND

101.  Pursuant to Fed. R. Civ. P. 38(b), Intel demands a jury trial of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Intel prays for the following relief against Defendants:

a. Declaratory Judgment that Intel has rights at no cost to the results of the Multiscalar Paradigm research, including, but not limited to, rights to the Alleged Invention claimed under the '752 Patent;

b. The issuance of an Order and Permanent Injunction that: compels Defendants to grant Intel rights at no cost to the results of the Multiscalar Paradigm research, including, but not limited to, rights to the Alleged Invention claimed under the '752 Patent; and permanently enjoins Defendants, and their affiliates, agents or employees, from assisting in WARF's patent infringement suit against Intel;

c. An award of actual damages in an amount to be determined at trial, including any amounts for indemnification or contribution;

d. An award of damages in an amount to be established at trial to punish Defendants for their reckless and callous disregard and deliberate indifference to Intel's constitutional rights;

e. An award of attorneys' fees and costs incurred in pursuit of this action, including attorneys' fees pursuant to 42 U.S.C. § 1988(b);

19

USIDOCS 6922009v1

f.  A writ of mandamus, pursuant to Wis. Stat. §§783.01-02, directing Defendants to perform under the agreement entered into with Intel Corporation by granting Intel rights at no cost to the results of the Multiscalar Paradigm research, including, but not limited to, rights to the Alleged Invention claimed under the '752 Patent; and

g.  Any such other relief as may be just and warranted under the circumstances.

Respectfully submitted,

BOARDMAN, SUHR, CURRY & FIELD LLP

Dated: December 5, 2008

/s/ Richard L. Bolton
Richard Bolton
State Bar No. 1012552
One South Pinckney Street, Fourth Floor
Madison, WI 53703
Tel: (608) 283-1789
Fax: (608) 283-1709
rbolton@boardmanlawfirm.com

*Attorneys for Plaintiff*
*INTEL CORPORATION*

Of Counsel:

William F. Lee (admitted *pro hac vice*)
Stephen M. Muller (admitted *pro hac vice*)
Patrick M. Callahan (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax:(617) 526-5000