IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTEL CORPORATION,
a Delaware Corporation,

OPINION AND ORDER

Plaintiff,

08-cv-700-bbc

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
UNIVERSITY OF WISCONSIN-MADISON,
and CAROLYN A. MARTIN, JOHN D.
WILEY, DAVID WARD, MARVIN H.
SOLOMON, DAVID M. KONSHAK,
GURINDAR S. SOHI, SCOTT E. BREACH,
ANDREAS I. MOSHOVOS and TERANI N.
VIJAYKUMAR, individuals,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action plaintiff Intel Corporation asserts 12 causes of action against different groups of defendants. All 12 causes of action stem from an alleged agreement between plaintiff and defendant University of Wisconsin-Madison in which plaintiff agreed to provide funding for research on the "Investigation of Multiscalar Paradigm" in exchange for free access to the results. Before the court is a motion to dismiss plaintiff's complaint

1

filed by defendants Board of Regents of the University of Wisconsin System, UW Madison, Carolyn A. Martin and Gurindar S. Sohi, dkt. #9, which was joined by defendants David Konshak, Scott E. Breach, David Ward, John D. Wiley, Marvin H. Solomon, Andreas I. Moshovos and Terani Vijaykumar, dkt. ## 16 & 21. Jurisdiction is alleged to be present under 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

Plaintiff asserts several state causes of action and one federal cause of action. I conclude that plaintiff fails to state a claim under 42 U.S.C. § 1983 for violation of its Fifth and Fourteenth Amendment due process rights or under any act of Congress relating to patents. The dismissal of those claims prevents plaintiff from asserting federal question subject matter jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C. § 1338. All that remains are plaintiff's state law causes of action. I conclude that there is no diversity jurisdiction under 28 U.S.C. § 1332 because defendants Board of Regents of the University of Wisconsin System and University of Wisconsin-Madison are arms of the state, making the state a real party in interest. The state's presence as a defendant defeats diversity jurisdiction. Because there is no diversity jurisdiction, jurisdiction over plaintiff's state causes of action must arise from 28 U.S.C. § 1367's grant of supplemental jurisdiction. With no basis for original jurisdiction, I decline to exercise supplemental jurisdiction over plaintiff's state causes of action in accordance with § 1367(c)(3). Thus, defendants' motion will be granted and plaintiff's § 1983 claim will be dismissed for failure to state a claim. The remainder of

2

plaintiff's claims will be dismissed for lack of subject matter jurisdiction.

Before addressing the merits of defendants' motion, I note that defendants move to dismiss under Fed. R. Civ. P. 12(b)(1), (2) and (6). Plaintiff contends that although defendants have moved to dismiss under all three rules, they do not address dismissal under Rule 12(b)(1) or (2). Plaintiff is correct with respect to Rule 12(b)(2). However, Rule 12(b)(1) raises an issue about the lack of subject matter jurisdiction, an issue I have an independent responsibility to examine. Posciotta v. Old National Bancorp., 499 F.3d 629, 634 (7th Cir. 2007). Furthermore, defendants have an implicit argument that if the court dismisses plaintiff's 42 U.S.C. § 1983 claim for failure to state a claim under Rule 12(b)(6), subject matter jurisdiction will be lacking under Rule 12(b)(1). Therefore, I will address defendants' motion to dismiss under both Rule 12(b)(1) and (6).

Generally, when a court decides a motion to dismiss under Rule 12(b)(6), it can consider only the complaint in its analysis. Hill v. Trustees of Indiana University, 537 F.2d 248, 251 (7th Cir. 1976). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." Venture Associate Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993) (citations omitted). This exception to the general rule is meant to "prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." 188 LLC v. Trinity Industries, Inc., 300 F.3d 730,

3

735 (7th Cir. 2002).

In this case, I find it proper to consider as part of the pleadings (1) the research proposal defendant Sohi sent to plaintiff, referred to in paragraph 20 of plaintiff's complaint; (2) the December 8, 1994 letter from plaintiff to defendant Solomon agreeing to provide funds, referred to in paragraph 21 of plaintiff's complaint; (3) the November 14, 1995 letter from plaintiff to defendant Solomon agreeing to provide more funds, referred to in paragraph 26 of the complaint; and (4) defendant Sohi's June 17, 1996 invention disclosure form, as referred to in paragraph 34 of plaintiff's complaint.  Dkts. ## 12-4 - 12-6, 12-8 - 12-10.  All four of these documents are relevant to the alleged agreement between plaintiff and defendants and to defendants' knowledge that plaintiff's funding helped in the research that produced the invention that plaintiff alleges it has the right to use.  Documents of the alleged agreement between the parties are central to plaintiff's claim regarding the parties' agreement.  Accordingly, I will consider the four listed documents attached to defendant's motion to dismiss as part of the pleadings in ruling on defendants' motion.

I draw the following facts from plaintiff's complaint and the four listed documents attached to defendants' motion to dismiss.

## ALLEGATIONS OF FACT

### A.  Parties

4

Plaintiff Intel Corporation is a Delaware corporation with its principal place of business in Santa Clara, California. Defendant Board of Regents of the University of Wisconsin System is an 18-person board established under Chapter 36 of the Wisconsin Statutes to govern the University of Wisconsin System. It maintains its principal place of business in Madison, Wisconsin. Defendant University of Wisconsin-Madison is a public university with its principal place of business in Madison, Wisconsin. Defendant Carolyn A. Martin is Chancellor of defendant University of Wisconsin-Madison and a citizen of Wisconsin. Defendant John D. Wiley was Chancellor of UW Madison between 2001 and September 2008 and a citizen of Wisconsin. Defendant David Ward was Chancellor of UW Madison between 1993 and 2001. Defendant Marvin H. Solomon is a professor of Computer Sciences at UW Madison and a citizen of Wisconsin. Defendant David M. Konshak was an Assistant Trust Officer for the University of Wisconsin System. Defendant Gurindar S. Sohi is a professor of Computer Sciences at UW Madison and a citizen of Wisconsin. Defendants Scott E. Breach, Andreas I. Moshovos and Terani N. Vijaykumar were all doctoral candidates and assistant professors in UW Madison's Department of Computer Sciences at times relevant to this action. (The citizenship of defendants Ward, Konshak, Breach, Moshovos and Vijaykumar is unknown.)

B. The 1994 Research Proposal

5

In 1994, defendant Sohi was an associate professor in UW Madison's Department of Computer Sciences. He submitted a research proposal to plaintiff entitled "Investigation of the Multiscalar Paradigm." Initially Sohi was seeking $108,000 but altered that amount to $89,000. The funding was to be provided over three years, from January 1995 to December 1997. The research proposal highlighted two objectives: "(i) to continue the development and refinement of the multiscalar model, and (ii) to create an environment in which bidirectional transfer of technology and expertise can occur between Intel and [Sohi's] research group at the University of Wisconsin." Dkt. #12-4 at 5. With respect to the proposed research, the proposal explained

> Industrial involvement is critical at this point; Intel would be the ideal industrial partner. . . . This research proposal would: (i) allow us to increase our research efforts in the investigation of the multiscalar architecture, (ii) allow us to obtain valuable industrial input in our design decisions, (iii) create an environment in which our technology could be transferred to Intel.

Dkt. #12-5 at 4. The proposal further listed some "deliverables," that is, tangible evidence of the research that would be provided to plaintiff:

- Detailed results of our experiments and their analyses.

- Papers and technical reports describing aspects of the multiscalar architecture.

- A preliminary assessment of the enhancements required to the x86 ISA and/or binaries to use the multiscalar.

- Semi-annual (or more frequent if desired by Intel) progress reports detailing progress made towards attaining the above research goals.

6

Dkt. #12-5 at 5. The proposal requested three installments of funds: $28,000 the first year, $30,000 the second year and $31,000 the third year. Dkt. #12-6 at 1.

### C. Plaintiff's 1994 Funding

On December 8, 1994, plaintiff wrote to defendant Solomon, who was chair of UW Madison's Computer Sciences Department at the time, agreeing to provide the first year's funding. The letter stated in part:

> Intel Corporation is pleased to grant $28,000 to the Department of Computer Science at the University of Wisconsin to support the research of Professor Gurindar Sohi in the area of "Investigation of the Multiscalar Paradigm."
>
> No restrictions per se are imposed on the grant except that it be used solely to support basic research in the technologies previously mentioned, and that Intel shall have unrestricted rights at no cost to the results of this research. . . . Will you please *sign and return* to me this letter indicating your acceptance of this basic research grant . . . .
>
> When we receive this letter back, we will forward the funds to you.

Dkt. #12-8 at 2. (Emphasis in original.) On December 29, 1994, defendant Konshak signed the December 8 letter and returned it to plaintiff. Plaintiff then provided defendant UW Madison $28,000.

### D. Plaintiff's 1995 Funding

On November 14, 1995, plaintiff wrote again to defendant Solomon, agreeing to provide the second year's funding. The letter stated in part:

> Intel Corporation is pleased to grant $30,000 to the Department of Computer Science at the University of Wisconsin to support the research of Professor S. Gurindar Sohi [in] the area of "Investigation of the Multiscalar Paradigm."
>
> No restrictions per se are imposed on this grant except that it be used solely to support research in the technologies previously mentioned, and that Intel shall have unrestricted rights at no cost to the results of this research. . . .  Will you please *sign and return* to me this letter indicating your acceptance . . . .
>
> When we receive this letter back, we will forward the funds to you.

Dkt. #12-9 at 2.  (Emphasis in original.)  On December 18, 1995, defendant Konshak signed the November 14 letter and returned it to plaintiff.  Plaintiff then provided defendant UW Madison $30,000.

### E.  The Invention of United States Patent No. 5,781,752

Defendants Breach, Moshovos and Vijaykumar were supervised by defendant Sohi in research related to the Multiscalar Paradigm.  Those defendants benefited from the funds provided by plaintiff and knew or should have known that plaintiff was funding their research in part.  The research of the Multiscalar Paradigm resulted in the creation of an invention that was ultimately claimed in United States Patent No. 5,781,752 (the '752 patent).  The invention was conceived in October 1995 and reduced to practice between

8

October and November 1995.

Defendants Sohi, Breach, Moshovos and Vijaykumar assigned rights to the invention claimed in the '752 patent to the Wisconsin Alumni Research Foundation, which UW Madison has designated as its patent management organization. To properly assign the invention to WARF, Sohi, Breach, Moshovos and Vijaykumar had to sign a Memorandum Agreement and a UW Madison Invention Disclosure Report. The report requires that inventors identify any non-federal funds contributed to making the invention and any other relevant agreements. Cpt., dkt. #1, ¶33. The report states, "In submitting this form you are accepting the responsibility for the accuracy of the information supplied and for ensuring that all inventors will be provided with copies of this form." Id., citing http://www.warf.org/inventors/index.jsp?cid=17&scid=20.

On June 17, 1996, defendant Sohi submitted an Invention Record and Report to WARF, listing plaintiff as one source of funding for the research leading to the invention. The invention is described as a dynamic approach to improve accuracy of data dependence speculation. On December 26, 1996, WARF filed a patent application claiming the invention reported by Sohi. On July 14, 1998, the '752 patent, which is titled "Table Based Data Speculation Circuit for Parallel Processing Computer," was issued. The '752 patent lists defendants Sohi, Breach, Moshovos and Vijaykumar as inventors.

9

F.  The '752 Patent Infringement Lawsuit and Plaintiff's Letter to UW Madison

On February 8, 2008, WARF filed a patent infringement suit against plaintiff in the Western District of Wisconsin, Wisconsin Alumni Research Foundation v. Intel Corporation, No. 08-cv-78-bbc, alleging infringement of the '752 patent.  On November 3, 2008, plaintiff sent defendant UW Madison a letter asking whether UW Madison would honor plaintiff's contractual rights with respect to the results from the Multiscalar Paradigm research, which included the '752 patent.  Although UW Madison told plaintiff that it was evaluating the issues plaintiff raised, it failed to answer the question by November 19, 2008. Instead, defendants continued to assist WARF in pursing its patent infringement suit against plaintiff.  Defendants' failure to honor the agreement has caused plaintiff to incur substantial damages.

OPINION

A.  Plaintiff's Due Process Cause of Action

Under Fed. R. Civ. P. 12(b)(6), a claim or entire complaint may be dismissed for a "failure to state a claim upon which relief can be granted."  Although a plaintiff need satisfy only a liberal notice pleading standard, Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988), its claim will be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Bell Atlantic Corp. v.

10

Twombly, 550 U.S. 544, 558 (2007).

The parties dispute whether plaintiff's Fifth and Fourteenth Amendment due process claim is merely a breach of contract claim that cannot be brought under § 1983 or whether plaintiff's contract with the university to receive the results of the Multiscalar Paradigm research free of cost in exchange for funding the research created a constitutionally protected property right that entitles plaintiff to assert a due process claim under § 1983. From the face of the complaint it is unclear whether the contract provides plaintiff a constitutionally protected property interest. Taake v. County of Monroe, 530 F.3d 538, 540-41 (7th Cir. 2008) ("[C]aselaw from our circuit dispels the notion that a substantive constitutional property interest arises simply because a state actor breached a contract with a state citizen."); Mid-American Waster Systems, Inc. v. City of Gary, Indiana, 49 F.3d 286, 289 (7th Cir. 1995) ("[T]he conclusion that all contract rights are property rights . . . has the potential to move ordinary contract litigation between private parties and state actors into federal court, despite the lack of diversity jurisdiction, by making every breach of contract a federal issue."). It is unnecessary to decide this question in this case. Even assuming that plaintiff's contract for rights to the research results created a constitutionally protected property interest, plaintiff has not stated a due process claim.

"The due process clauses in the fifth and fourteenth amendments do not protect property interests unconditionally." Goros v. County of Cook, 489 F.3d 857, 859 (7th Cir.

11

2007). Although "[d]ue process usually means notice and an opportunity for a hearing," id., plaintiff is not seeking a hearing. Plaintiff is seeking relief in the form of (1) damages; (2) a declaration that the contract provides plaintiff with rights to the results of the research, including rights to the invention claimed under the '752 patent; and (3) an injunction barring defendants from assisting in the '752 patent infringement suit against plaintiff. Cpt., dkt. #1, at 19. The requested declaration and injunction are essentially requests for specific performance of plaintiff's funds-for-research-results contract. Plaintiff's requested remedies are breach of contract remedies. In other words, like the plaintiffs in Goros, 489 F.3d at 860, plaintiff "do[esn't] want *process*; [it] want[s] money." (Emphasis in original.)

The Court of Appeals for the Seventh Circuit has stated that "unless the plaintiff maintains that the state actor had to offer a hearing to resolve some contested issue of fact, the dispute belongs in state court under state law." Id. Plaintiff's complaint in this case leaves no doubt that plaintiff is not seeking process. It raises issues about the meaning and effect of its funds-for-research-results contract. "[D]ue process clauses do not require hearings to resolve disputes about the meaning and effect of . . . contracts." Id. I conclude, therefore, that plaintiff fails to state a procedural due process claim.

In addition to procedural due process, due process contains a substantive component. E.g., County of Sacramento v. Lewis, 523 U.S. 833 (1998). Although plaintiff has not made it entirely clear, it seems to be invoking substantive due process by alleging that defendants

12

were "deliberately indifferent" to plaintiff's constitutional rights. Cpt., dkt. #1, at 17, ¶ 92.

Part of the difficulty in deciding whether plaintiff is attempting to state a substantive due process claim stems from the fact that "substantive due process is a difficult concept to pin down." Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir. 2005). Nonetheless, it is understood that substantive due process "is . . . derived from the many constitutional rules that protect personal liberty from unjustified intrusions," National Paint & Coatings Association v. City of Chicago, 45 F.3d 1124, 1129 (7th Cir. 1995), and "is most often described as an abuse of government power which 'shocks the conscience,'" Tun, 398 F.3d at 902 (quoting Rochin v. California, 342 U.S. 165 (1952)). Because substantive due process is created out of a combination of constitutional rules and involves only the most shocking abuses, its scope includes only "a handful of fundamental rights." Goros, 489 F.3d at 860 (citing Washington v. Glucksberg, 521 U.S. 702 (1997)); see also National Paint, 45 F.3d at 1129 ("Only laws that affect 'fundamental rights' come within the purview of the [substantive due process].").

None of plaintiff's allegations support an inference that defendants deprived plaintiff of any fundamental right. Plaintiff alleges a breach of a commercial contract, which, even if willful, cannot be said to "shock the conscience." If it could, any breach of contract case involving state actors could be heard in federal court regardless of diversity, nullifying "the terms of diversity jurisdiction." Goros, 489 F.3d at 860. At any rate, plaintiff is a

13

corporation and "[c]orporations do not have fundamental rights; they do not have liberty interests, period." National Paint, 45 F.3d at 1129. Plaintiff has failed to state a substantive due process claim.

Plaintiff makes one final argument that its due process claim should not be dismissed, contending that it must be permitted to bring its due process claim under 42 U.S.C. § 1983 to insure that it receives some remedy. It notes that its state common law breach of contract claims may be defeated by defendants' statute of limitations and sovereign immunity defenses. Constitutional claims are not default provisions that provide remedies when all else fails. The possibility that plaintiff will not be successful in its pursuit of its state law breach of contract claims does not mean that it can proceed on its due process claim under § 1983.

B. Supplemental Jurisdiction

Because plaintiff has failed to state a claim under 42 U.S.C. § 1983 and states no other federal causes of action, it cannot invoke this court's federal question jurisdiction as the original jurisdiction necessary to invoke supplemental jurisdiction over its remaining state law causes of action. Thus, plaintiff must invoke either diversity jurisdiction under 28 U.S.C. § 1332 or some other form of original jurisdiction to give the court subject matter jurisdiction over its remaining state law claims.

14

1. Diversity jurisdiction

A review of the allegations in plaintiff's complaint reveals that diversity jurisdiction does not exist. An initial jurisdictional deficiency is plaintiff's failure to allege the citizenship of defendants Ward, Konshak, Breach, Moshovos and Vijaykumar. Plaintiff alleges where each of those defendants reside "but residence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction." Meyerson v. Harrah's East Chicago Casino, 299 F.3d 616, 617 (7th Cir. 2002). Thus, plaintiff's complaint fails to show any basis for diversity jurisdiction.

Aside from plaintiff's failure to allege every defendant's citizenship, there is a deeper problem. Plaintiff has named as defendants Board of Regents and UW Madison. In relevant part, 28 U.S.C. § 1332 provides district courts with subject mater jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. "It is well-established that a state is not considered a citizen of any state for purposes of diversity jurisdiction. Thus there can be no diversity jurisdiction when a state is a real party in interest to a lawsuit." People of State of Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 575 n.5 (7th Cir. 1982). It is also well established that a state agency that is the arm or alter ego of the state is the state for diversity purposes. Indiana Port Commission v. Bethlehem Steel Corp., 702 F.2d 107, 109 (7th Cir. 1983).

Whether the state is a real party in interest in this case depends on whether

15

defendants Board of Regents and UW Madison are arms of the state. If they are, the state is a real party in interest and there is no diversity. Plaintiff does not deny that defendants Board of Regents and UW Madison are the arm or alter ego of the State of Wisconsin for Eleventh Amendment purposes. Case law further supports this conclusion. E.g., Joseph v. Board of Regents of the University of Wisconsin System, 432 F.3d 746, 748 (7th Cir. 2005) (Board of Regents is 'arm of state' for Eleventh Amendment purposes) and Romco, Ltd. v. Outdoor Aluminum, Inc., 725 F. Supp. 1033 (W.D. Wis. 1989) (holding that Board of Regents fo the University of Wisconsin System is arm of state); see also Peirick v. Indiana University-Purdue University Indianapolis Athletics Department, 510 F.3d 681, 695 (7th Cir. 2007) (state university governing body enjoys same sovereign immunity as university). Under Adden v. J.D. Middlebrooks, 688 F.2d 1147, 1150 (7th Cir. 1982), deciding whether a state agency is an arm of the state requires the same inquiry, whether the court is making the determination under the Eleventh Amendment or diversity jurisdiction analysis. Because defendants Board of Regents and UW Madison are arms of the state for Eleventh Amendment purposes, they are arms of the state for diversity purposes. Accordingly, the state is a real party in interest in this case, defeating diversity jurisdiction.

2.  Jurisdiction under 28 U.S.C. § 1338

Plaintiff alleges that this court has subject matter jurisdiction over this lawsuit under

16

28 U.S.C. § 1338, which allows original jurisdiction over causes of action that "arise[] under any Act of Congress relating to patents." Although the alleged contract may involve rights to the '752 patent, suits on contract-related or misrepresentation causes of action do not arise under any federal law related to patents. International Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1329 (Fed. Cir. 2001) ("[T]he question of who owns patent rights, and on what terms, typically is a question exclusively for state courts and not one arising under United States patent law."). Thus, there is no original jurisdiction under § 1338.

Because none of plaintiff's remaining causes of action fall under the court's original jurisdiction, it is within the court's discretion to decline to exercise supplemental jurisdiction over plaintiff's remaining causes of action. 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." Wright v. Associated Insurance Companies, Inc., 29 F.3d 1244, 1251 (7th Cir. 1994). Although there are "unusual cases" where factors such as judicial economy, convenience, fairness and comity may lead a court to exercise its discretion to address such claims on their merits, this is not such a case. Id. At this early stage in the proceeding, where discovery has been stayed waiting a decision on defendants' motion to dismiss, see dkt. #26, there is no reason to exercise jurisdiction over plaintiff's state law claims. The better course of action is to dismiss

17

the lawsuit for lack of subject matter jurisdiction so that plaintiff can file its state law claims in state court.  Thus, I will decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## C.  Conclusion

Plaintiff has failed to state a claim under 42 U.S.C. § 1983 for a violation of its due process rights as provided by the Fifth and Fourteenth Amendments.  Because that claim was plaintiff's only federal question claim, dismissal of the claim prevents plaintiff from asserting 28 U.S.C. § 1331 as the basis for subject matter jurisdiction.  Furthermore, the presence of defendants Board of Regents and UW Madison in this lawsuit prevents complete diversity because they are arms of the state, which makes the state a real party in interest and destroys diversity jurisdiction, because a state is not a citizen of any state for purposes of diversity jurisdiction.  Plaintiff also fails to state any claims arising under any federal law related to patents.  With no original subject matter jurisdiction over any of plaintiff's remaining state law claims, I decline to exercise supplemental jurisdiction over those claims in accordance with 28 U.S.C. § 1367(c)(3).  Accordingly, plaintiff's 42 U.S.C. § 1983 claim will be dismissed with prejudice for failure to state a claim upon which relief can be granted and the remainder of plaintiff's complaint will be dismissed without prejudice under § 1367(c)(3) for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that:

1. The motion to dismiss, dkt. #9, filed by defendants Board of Regents of the University of Wisconsin System, University of Wisconsin Madison, Carolyn A. Martin and Gurindar S. Sohi and joined, dkts. ##16 & 21, by defendants David Konshak, Scott E. Breach, David Ward, John D. Wiley, Marvin H. Solomon, Andreas I. Moshovos and Terani Vijaykumar is GRANTED;

2. Plaintiff Intel Corporation's eleventh cause of action brought under 42 U.S.C. § 1983 for a violation of its due process rights as provided by the Fifth and Fourteenth Amendments is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted;

3. The remainder of plaintiff's causes of action are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(3) for lack of subject matter jurisdiction;

4. The clerk of court is directed to close this case.

Entered this 24th day of April, 2009.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge